CROWNITE CORPORATION,
Plaintiff-Appellant,

v.

James A. WATT, Secretary of Interior of
the United States of America; Robert
Burford, Director, Bureau of Land
Management, etc., Defendants-Appellees.

No. 83–2530.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1984.

Decided Feb. 8, 1985.

Don Erik Franzen, Franzen & Assoc.,
Los Angeles, Cal., for plaintiff-appellant.

Robert Steinberg, Dept. of Justice,
Washington, D.C., for defendants-appellees.

Before BROWNING, Chief Judge, DU-
NIWAY and SNEED, Circuit Judges.

PER CURIAM:

The Secretary of the Interior denied appellant Crownite Corporation's application to the Department of the Interior, Bureau of Land Management (BLM), under the Geothermal Steam Act of 1970 for conversion of its mining claims into priorities for federal geothermal steam leases. Crownite sought review in the district court. The court granted the Secretary's motion for summary judgment. On appeal, Crownite argues that (1) Crownite satisfied the requirements of the Geothermal Steam Act, and BLM erred in determining otherwise; (2) BLM's procedures denied Crownite an administrative hearing, violating Crownite's right to due process of law; (3) the lengthy delay in processing Crownite's application prejudiced Crownite and should estop the Secretary from denying the application. We affirm.

## I

The Geothermal Steam Act of 1970, 30 U.S.C. §§ 1001–1025 (1982), authorized the Secretary of the Interior to lease federal lands for geothermal power development. The owner of a mining claim may apply for a conversion right, which allows him to obtain a geothermal lease on lands within his claim, by matching the highest bidder. To qualify for a conversion right, a party must prove

> to the reasonable satisfaction of the Secretary that substantial expenditures for the exploration, development, or production of geothermal steam have been made by the applicant.

30 U.S.C. § 1003(e). Both the Act and the regulations required applications for conversion rights to be submitted by June 22, 1971. 30 U.S.C. § 1003; 43 C.F.R. § 3230.-3-1. The regulations further required that the application be accompanied by a detailed statement showing the expenditures made for the exploration, development, or production of geothermal resources and information to enable BLM to confirm these expenditures such as the dates of the expenditures, the names and addresses of persons who performed the work, the data

acquired, and a map showing where the work was done. 43 C.F.R. § 3230.3-2.

Crownite submitted its application for conversion rights on June 21, 1971. The application expressly acknowledged that "[n]o substantial amount of money has been spent leading to this application" for geothermal exploration or development. BLM notified Crownite its application was deficient for failure to show the required expenditures. Crownite supplemented its application on February 14, 1973. BLM twice again notified Crownite that its application failed to disclose the necessary expenditures. On October 30, 1974, the BLM District Manager recommended denial of Crownite's application on this ground, among others.

Further processing of Crownite's application was held in abeyance while two of Crownite's principals, Mr. Jones and Mr. Merchant, fought for control of the company. On May 11, 1978, Crownite filed an answer to the District Manager's report. On August 10, 1979, BLM advised Crownite that its application was still deficient. On April 21, 1981, BLM transmitted the application to the Secretary for evaluation. The application was formally rejected on July 24, 1981.

## II

■ Because the Geothermal Steam Act does not require the Secretary to hold a hearing or make formal findings, we review the denial of the application under the arbitrary or capricious standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982). *Camp v. Pitts*, 411 U.S. 138, 140–42, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973) (per curiam).

■ In its initial application, Crownite stated it had spent no money on geothermal exploration or development. The application therefore failed to meet the statutory and regulatory requirements by the established deadline. Even if we accept the subsequent modifications as timely, BLM was fully justified in concluding that

Crownite had not spent substantial monies on geothermal investigation.

The regulations require the production of "geological, geophysical, and engineering data ... [which] demonstrate the expenditures claimed." 43 C.F.R. § 3230.3–2(c). Crownite asserts it spent over $20,000 on geothermal investigations, but there was no documentation or other verification of any such expenditures. Crownite submitted only one supporting report, but when BLM contacted the author he indicated he had been paid nothing, and was to be paid only if the geothermal resources were ever developed. Other persons listed as having done geothermal exploratory work were either unreachable or when contacted denied having done such work. None of the fourteen test holes allegedly drilled could be located when the claim sites were inspected.[1]

### III

■ Absent extreme circumstances, failure to request a hearing results in the waiver of any right a party may have had to a hearing. *Georgia-Pacific Corp. v. EPA*, 671 F.2d 1235, 1242–43 (9th Cir.1982). *See also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). Crownite did not request a hearing in the proceedings before the agency.

### IV

■ We also reject Crownite's contention that the Secretary should be estopped from denying the application because delay in processing the application seriously prejudiced Crownite's ability to obtain evidence necessary to refute the Secretary's conclusions.

Most of the delay resulted from Crownite's failure to provide the required evidence of expenditures for exploration and development, Crownite's repeated pleas for extensions of time, and internal disputes among Crownite's stockholders.

Moreover, Crownite failed to show prejudice. *See Estate of French v. FERC*, 603 F.2d 1158, 1167 (5th Cir.1979). Crownite points to no evidence that became unavailable during the period when BLM may have been responsible in part for the delay. Crownite made no effort to locate or preserve any such evidence; indeed, Crownite does not suggest what such evidence might have been. Moreover, if Crownite possessed information proving expenditures which now has been lost, Crownite, not the Secretary, should be estopped: Crownite was required by regulation to submit such information with its original application required by statute to be filed by June 22, 1971, and filed one day before the statutory deadline. Crownite's failure to include the information in this application, and its repeated failure to supply such information in response to BLM's subsequent requests, precludes Crownite from now contending that it was prevented from presenting the evidence by the Secretary's delay.

AFFIRMED.

DUNIWAY, Circuit Judge (concurring):

I concur in Judge Browning's per curiam opinion.

---

1. On appeal, Crownite relies on expenditures not presented to the agency, including the issuance of 100,000 shares of its stock to its president, and expenditures on pumice mining. Since this information was not submitted to the agency, we may not consider it. *See Twiggs v. U.S. Small Business Administration*, 541 F.2d 150, 152 (3d Cir.1976); 5 U.S.C. § 706(2)(E) (1982). Moreover, Crownite's claim that pumice is a geothermal product within the meaning of the Act is not supported by the Act itself. 30 U.S.C. § 1001(c).